GEORGESON, Plaintiff and Appellant, vs. NIELSEN and another, Defendants and Respondents, and DENNIS, Interpleaded Defendant and Appellant.

*January 9—February 6, 1934.*

192

For the appellants there was a brief by *Earl J. Plantz,* attorney for Earl Georgeson, and *George J. Bowler,* attorney for Frank Dennis, both of Antigo.

For the respondents there was a brief by *Ray C. Dempsey* and *Gustav Winter,* both of Antigo, and oral argument by *Mr. Dempsey.*

NELSON, J. On June 23, 1932, the plaintiff Georgeson borrowed a trailer for the purpose of transporting three head of cattle from points located over fifteen miles northeast of Antigo to a pasture located south of that city. He owned an automobile but it was not equipped with a "hitch" which would permit the trailer to be attached to it. He therefore went to a blacksmith shop for the purpose of having a "hitch" made. While Georgeson was waiting for the

"hitch" to be made, Dennis, with whom he was well acquainted, came along in his Chevrolet coupe. After learning what Georgeson was doing and what he was about to do, Dennis offered to permit the trailer to be attached to his coupe, which was equipped with a "hitch," and to go with Georgeson for the cattle. Thereafter the trailer was attached to the Dennis coupe and they proceeded to get the cattle. The trip back with the cattle was uneventful until they reached a point just beyond the southerly limits of the city of Antigo, where a collision between the coupe and two other automobiles occurred. Shortly before reaching the limits, Nielsen, who was driving a Buick sedan, passed the coupe and trailer. Thereafter the Nielsen automobile and the Dennis coupe continued to travel at a speed of about twenty-five to thirty miles per hour. The distance maintained between the automobiles was ninety to one hundred feet. Within a distance of two blocks after Nielsen passed the coupe and trailer he stopped his automobile upon observing that one of his employees was sitting on the front porch of the latter's house, which was located on the right side of the highway. There was a sharp dispute in the testimony as to the nature of Nielsen's stop—whether it was a sudden or gradual, and also as to where the Nielsen automobile was stopped,—whether on or off the concrete. When Dennis observed that the Nielsen car was stopping he applied his brakes but was apparently unable to stop before reaching the Nielsen automobile. Dennis either turned his coupe to the left in an attempt to avoid hitting the Nielsen automobile, or the loaded trailer forced the coupe to the left. Just at that time an automobile occupied by the plaintiffs James was approaching from the south on its side of the highway. The Dennis coupe collided with both the Nielsen and James automobiles, the trailer became detached and also collided with the Nielsen car. Both Mrs. James and Georgeson were injured and all three cars damaged.

The jury found that Nielsen was not negligent in the manner in which he stopped his automobile but was negligent in not leaving an unobstructed width of not less than fifteen feet on the roadway opposite his automobile; that such negligence was a proximate cause of the plaintiffs' injury and damage; that Dennis was not negligent in respect to maintaining a proper lookout or in respect to the distance he maintained between his automobile and the Nielsen automobile "considering the load he was hauling," but was negligent in the manner in which he operated his automobile "considering the load he was hauling" and that such negligence was a cause of plaintiffs' injuries and damages. The jury assessed the damages sustained by the several parties and also found that fifty per cent. of all the negligence which produced the collision was attributable to Nielsen and fifty per cent. to Dennis. The usual motions for judgment, for judgment notwithstanding the verdict, to change the answers and for judgment on the verdict as changed, and for a new trial, were made by Georgeson and Dennis. The court denied all of the motions and among other things ordered judgment dismissing the complaint of Georgeson and the counterclaim of Dennis.

Georgeson contends that the court erred in denying his motion for judgment on the verdict as rendered. In support of this contention it is argued that the undisputed facts show that the relationship existing between Dennis and Georgeson was that of host and guest and it was therefore improper to impute the negligence of Dennis to Georgeson. While there is some basis for the argument if only the conversation between Georgeson and Dennis at the blacksmith shop, as testified to by them, is considered, the undisputed fact is that Dennis was engaged in performing Georgeson's job, namely: transporting cattle for him. It was clearly Georgeson's enterprise which Dennis and Georgeson were furthering. What was done was done for the benefit of Georgeson.

Although, according to the testimony, Dennis was not to receive any compensation, it is our opinion that while he was engaged in transporting the cattle for Georgeson he was a gratuitous agent of Georgeson and the relationship of agency, not that of host and guest, existed between them.

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. . . .

"(a) The relationship of agency is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.

"(b) It is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes upon them as a result of it. On the other hand, there is not necessarily an agency relationship because the parties to a transaction say that there is, or contract that the relationship shall exist, or believe it does exist. Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." Restatement of the Law of Agency, sec. 1, pp. 7, 8.

Since the agency was gratuitous, neither party was under any obligation to continue the relationship. Sec. 16, Restatement of the Law of Agency. But so long as Dennis continued in Georgeson's enterprise the agency continued. As before stated, it was Georgeson's work or enterprise that was being performed. He directed Dennis where to go to get the cattle and directed him where to transport them. While Dennis could have terminated the relationship at any time and was not under the control of Georgeson as to just how he should operate his automobile, he was, in our opinion, the agent of Georgeson while engaged in transporting the cattle.

Georgeson and Dennis next contend that the court erred in denying their motions for judgment notwithstanding the

verdict. They assert that the answers of the jury to sub-division (c) of questions 3 and 4 should have been changed by the court or wholly disregarded. The jury found that Dennis was negligent in the manner in which he operated his automobile "(c) considering the load he was hauling" and that such negligence was a cause of the injuries to the plaintiffs. In view of our conclusion hereinafter stated which requires a reversal of the judgment for another reason, we do not deem it necessary to discuss this contention.

It is next contended that the verdict is inconsistent. While the verdict when considered in connection with the court's instructions may not be wholly inconsistent, we are of the opinion that the questions which were directed to the negligence of Dennis were so unfortunately framed that the jury must have been greatly confused and as a result failed to understand, with any degree of certainty, what ultimate facts were inquired about.

For the purpose of having the jury determine whether Dennis was negligent in operating his automobile, the court submitted the following questions:

". . . Was the defendant Dennis negligent in the manner in which he operated his automobile:
"(a) In respect to lookout?
"(b) In respect to the distance he maintained between his automobile and the Nielsen automobile, considering the load he was hauling?
"(c) Considering the load he was hauling?"

Having submitted subdivision (b) we are at a loss to understand just why the court should have submitted subdivision (c). It is clear that in determining whether Dennis was negligent in not maintaining a proper distance between his automobile and Nielsen's automobile it was proper for the jury to consider the speed at which he was traveling, the condition of the road, the amount of traffic, the condition of his brakes, his ability, acting with ordinary care, to stop his

car and trailer if required so to do by a situation not produced by another's negligence. It seems clear that any jury at all familiar with the operation of automobiles must have considered all of these elements in answering subdivision (b) of question 3. Having acquitted Dennis of any negligence as to the distance maintained between his automobile and the Nielsen automobile, the jury, in answer to the very next question, found that he *was* negligent, "considering the load he was hauling." Even considering the court's instructions with respect to subdivision (c) we think the question quite meaningless. Why the jury answered subdivision (b) "No" and subdivision (c) "Yes" is difficult to explain. We think the apparent inconsistency in the answers resulted from a confusion which must have arisen in the minds of the jury from the two questions, each of which stressed the element of "considering the load he was hauling." The court in its decision says:

"The wording of subdivision (c) of questions 3 and 4 certainly could have been improved upon; however, in connection with these questions, the court instructed the jury with reference to brakes and also with reference to the defendant keeping his automobile under control."

The instructions of the court did not enlighten the jury as to what particular ultimate facts were inquired about in subdivision (c). If there was evidence relating to the inefficiency of Nielsen's brakes or his failure to control his automobile or any other carelessness, such ultimate facts should have been separately inquired about. What was said in *Matuschka v. Murphy*, 173 Wis. 484, 487, 180 N. W. 821, in regard to the framing of special verdicts, and often approved since, is particularly applicable here:

"It is the function of a special verdict to secure a finding by the jury on each question litigated. In negligence cases each ground of negligence constitutes a distinct litigated

question, and proper practice requires that the jury be given an opportunity to find specially with reference to each particular ground of alleged negligence."

In our opinion the verdict was unfortunately framed and resulted in what appears to be an inconsistent verdict, which, reasonably considered, does not support the judgment. *Harter v. Dickman,* 209 Wis. 283, 245 N. W. 157. The trial court, after it appreciated that the verdict was not properly framed and that inconsistent findings had probably resulted, should have granted a new trial to the end that the parties might have the issues determined by a jury upon a properly framed verdict.

That the court erred in sustaining the plea in abatement filed by the Ohio Casualty Company is now clear. In *Lang v. Baumann,* 213 Wis. 258, 251 N. W. 461, and *Oertel v. Fidelity & Casualty Co., ante,* p. 68, 251 N. W. 465, it was held that under sec. 260.11, Stats., as amended by ch. 375, Laws of 1931, an insurance company is a proper party defendant in any action brought by a plaintiff on account of any claim against the insured, subject of course to the proviso that the policy be issued after June 30, 1931, the date of such enactment.

Defendant Nielsen has moved for a review of the court's action in refusing to change the answers to subdivision (b) of questions 3 and 4 from "No" to "Yes." It is argued that the collision was caused solely by the inability of Dennis to bring his car to a stop within a distance of ninety to one hundred feet after observing that Nielsen was stopping his automobile and that this case is ruled by *Marhofke v. Brucken,* 191 Wis. 442, 211 N. W. 303. We think the motion to review is without merit in view of the fact that the jury found Nielsen negligent in respect to leaving an unobstructed width of not less than fifteen feet of the roadway opposite his automobile. That Nielsen's negligence,

as found by the jury, was a cause of the collision is entirely free from doubt. It is clear that a jury might well conclude, from the evidence, that if Nielsen had turned his car onto the shoulder before stopping, the accident would not have occurred.

By the Court.—Judgment reversed, with directions to grant a new trial.